IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**CARROLL ELECTRIC
COOPERATIVE CORPORATION**                                                **PLAINTIFF**

**V.**                              **CASE NO. 3:23-CV-3017**

**ALLTEL CORPORATION**                                                    **DEFENDANT**

OPINION AND ORDER

This is a breach-of-contract case that Defendant Alltel Corporation removed from the Circuit Court of Carroll County, Arkansas. Before the Court is Defendant's Motion to Dismiss (Doc. 8) under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Carroll Electric Cooperative Corporation opposes the Motion.[1] The Court heard oral argument on the Motion on June 2, 2023. For the reasons given below, the Court **GRANTS** the Motion, and the case is **DISMISSED WITH PREJUDICE**.

I.   BACKGROUND

Plaintiff "is a rural electric distribution cooperative organized under the Electric Corporative Corporation Act of Arkansas." (Doc. 3, ¶ 1). Plaintiff alleges that in 1982, it built a telecommunications tower on property it leased from the City of Berryville,

---

[1] In deciding the Motion, the Court considered Defendant's Brief in Support of its Motion (Doc. 9), Plaintiff's Opposition (Doc. 12) and Brief in Support (Doc. 13), and Defendant's Reply (Doc. 17). In addition, the Court considered the Tower Attachment Sublease Agreement (Doc. 3, Ex. A) and the Second Amendment to the Sublease Agreement (Doc. 3, Ex. B)—both of which are attached to the Amended Complaint (Doc. 3)—and the First Amendment to the Sublease Agreement (Doc. 20-1, pp. 1–2) and Defendant's termination letter (Doc. 8-1)—both of which are embraced by the Amended Complaint and were submitted by Defendant. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (explaining that at the motion-to-dismiss stage, the district court may consider documents attached to or "necessarily embraced by the complaint").

1

Arkansas. In 1994, Plaintiff subleased a portion of the tower to Defendant[2] for the attachment of Defendant's radio communications equipment to the tower. The parties executed the Tower Attachment Sublease Agreement ("Agreement") (Doc. 3, Ex. A), which provided for an initial lease term of five years and granted Defendant the option to renew the lease for three additional five-year terms. Section 8(c) of the Agreement states, "Except as otherwise provided herein, this Sublease may be terminated, without penalty or further liability upon written notice . . . [b]y [Defendant or Plaintiff] for any reason or no reason at all upon six (6) months advance written notice." *Id.* at p. 9.

Defendant exercised its option to renew the Agreement for three additional lease terms, extending the Agreement through October 2014. In 2001, the parties executed the First Amendment to Tower Lease Agreement (Doc. 20-1, pp. 1–2), which allowed Defendant to place additional equipment on the tower and increased Defendant's rent. In 2011, ahead of the Agreement's expiration in 2014, the parties executed the Second Amendment to Tower Attachment Sublease Agreement (Doc. 3, Ex. B), which extended the lease beyond 2014 and again increased Defendant's rent. The Second Amendment states in part:

> Commencing October 27, 2014, the Agreement shall automatically be extended for four (4) additional five (5) year terms unless [Defendant] terminates it at the end of the then current term by giving [Plaintiff] written notice of the intent to terminate at least six (6) months prior to the end of the then current term.

*Id.* at p. 15. The Second Amendment's merger clause states in part, "The Agreement and Second Amendment contain all agreements, promises or understandings between

---

[2] Defendant Alltel's predecessor in interest, Northwest Arkansas RSA Limited Partnership, is the signatory to the Agreement. That entity has since merged with Alltel.

[Plaintiff] and [Defendant] and no verbal or oral agreements, promises or understandings shall be binding upon either [Plaintiff] or [Defendant] in any dispute, controversy or proceeding under law." *Id.* at p. 16.

Pursuant to the Second Amendment, the Agreement was automatically extended in 2019 for a 5-year term to end in October 2024. However, on April 19, 2022, Defendant wrote to Plaintiff that the Agreement "will terminate effective October 21, 2022 as per section 8 (c)." (Doc. 8-1).

Plaintiff alleges that Defendant's termination breached the Agreement because the Second Amendment only allowed unilateral termination at the end of a lease term with at least six months' notice. While Defendant provided six months' notice, the termination date was not at the end of the then-current lease term, which was not set to end until 2024. Plaintiff seeks $118,000 in damages, which comprises the rent Defendant would have paid for the remaining two years of the lease term.

Defendant's Motion to Dismiss argues that the Second Amendment did not alter Section 8(c) of the Agreement, which gave Defendant the right to terminate the Agreement *at any time* so long as it gave six months' notice. Accordingly, Defendant argues that Plaintiff cannot state a claim for breach of contract.

## II. DISCUSSION

The Court finds that Defendant's right to terminate the Agreement at any time with six months' notice survived the Second Amendment. Because the parties agree that Alltel provided six months' notice of its termination of the Agreement, Plaintiff fails to state a claim for breach of contract, and the case must be dismissed.

To survive a motion to dismiss, a plaintiff must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In order to state a cause of action for breach of contract, 'the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation of defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach.'" *Rabalaias v. Barnett*, 284 Ark. 527, 528–29 (1985) (quoting *Williams v. Black Lumber Co.*, 275 Ark. 144, 147 (1982)). A court "may dismiss a complaint based on a contract if the contract unambiguously shows that the plaintiff is not entitled to the requested relief." *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 108 (D.D.C. 2013) (quoting *DynCorp v. GTE Corp.*, 215 F.Supp.2d 308, 315 (S.D.N.Y. 2002)). "It is well settled that whenever parties to a contract express their intention in clear and unambiguous language in a written instrument, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed." *Green v. Ferguson*, 263 Ark. 601, 605 (1978).

The parties' disagreement hinges on the interaction between two provisions of the Agreement. Section 8(c) states, "Except as otherwise provided herein, this Sublease may be terminated, without penalty or further liability upon written notice . . . [b]y [Defendant or Plaintiff] for any reason or no reason at all upon six (6) months advance written notice," (Doc. 3, p. 9), and the Second Amendment to the Agreement states in part:

> Commencing October 27, 2014, the Agreement shall automatically be extended for four (4) additional five (5) year terms unless [Defendant] terminates it at the end of the then current term by giving [Plaintiff] written notice of the intent to terminate at least six (6) months prior to the end of the then current term.

4

*Id.* at p. 15.

At oral argument, the parties agreed that these provisions are unambiguous.[3] However, the parties have opposite views on what that unambiguous meaning is.

Defendant argues the Second Amendment gave it "the option to renew the Sublease Agreement from 2014 to 2019, then from 2019 to 2024, then from 2024 to 2029, and then from 2029 to 2034. Nothing in the Second Amendment, however, amended or deleted the language in paragraph 8 of the Sublease Agreement regarding both parties' rights to effectuate an early termination." (Doc. 9, p. 3).

Plaintiff counters that "the Second Amendment modified the language of paragraph 8(c) and is now the language that determines the right of the defendants to terminate the Sublease Agreement." (Doc. 13, p. 3). In other words, in Plaintiff's view, after the Second Amendment, Defendant could no longer terminate the Agreement *at any time* with six months' notice but instead could only terminate the Agreement at the end of a given lease term with at least six months' notice before the end of the term. Plaintiff points to the language in Section 8 which states that the Agreement may be terminated with six months' notice "[e]xcept as otherwise provided herein"; according to Plaintiff, the Second Amendment "otherwise provided" an alternate termination provision going forward, superseding Section 8(c).

The Court finds that Section 8(c) of the Agreement is unambiguous: the Agreement could be terminated at any time by either party upon six months' notice. Likewise, the Second Amendment is unambiguous: the Agreement was extended for four additional

---

[3] Neither party identified any contemporaneous correspondence or negotiations between the parties that could potentially shed light on the intent or meaning of the Second Amendment.

5

lease terms, and the renewal of those terms was changed from opt-in renewal—as in the original Agreement—to opt-out renewal. If Defendant did not want the Agreement to renew for an additional term, it had to opt out at least six months prior to the end of the current term. The termination language in the Second Amendment refers only to whether the lease term is automatically extended at the end of the current term, and nothing in the plain text of the Second Amendment purports to alter how the parties may terminate the Agreement under Section 8(c). The two provisions are unambiguous and do not conflict with one another.

Because the parties' broad termination rights in Section 8(c) survived the Second Amendment, Plaintiff's allegation that Defendant breached the Agreement by terminating it in October 2022 with six months' notice fails to state a claim upon which relief can be granted. In addition, Plaintiff has not sought leave to further amend its Complaint nor identified any additional facts it could plead to successfully state a claim against Defendant.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Dismiss (Doc. 8) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk is directed to close the case.

**IT IS SO ORDERED** on this 9th day of June, 2023.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

6